IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD F. BLIZZARD, Sr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-897-SLR |
| | ) | |
| COMMANDER, DELAWARE STATE | ) | |
| POLICE TROOP NINE, and | ) | |
| UNKNOWN DELAWARE | ) | |
| STATE POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

Donald F. Blizzard, Sr., Earleville, Maryland.  Pro Se.

Michael F. McTaggart, Esquire, Department of Justice, State of Delaware, Wilmington, Delaware.  Counsel for Defendant Commander, Delaware State Police Troop Nine.

**MEMORANDUM OPINION**

Dated:  July 22, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On December 1, 2008, pro se plaintiff Donald F. Blizzard, Sr. ("plaintiff") filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (D.I. 2) The claim arose when members of the Delaware State Police ("DSP") stopped a car in which plaintiff was a passenger. Plaintiff brought suit against the Commander of the DSP, Troop Nine ("defendant") and unknown Delaware State Police Officers, alleging that defendant's subordinates violated his civil rights by requesting that he exit the vehicle. Presently before the court is defendant's motion for summary judgment filed with supporting memoranda and the response thereto. (D.I. 22-23, 25-26) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the court grants the motion.

## II. BACKGROUND

In his complaint, plaintiff alleges that defendant, as the supervisor of Troop Nine of the DSP, violated his civil rights under the Fourth and Fourteenth Amendments. (D.I. 2 at 6) In his motion for summary judgment, defendant contends that the complaint fails to state a cause of action against him because he was not personally involved in the alleged incident. (D.I. 23 at 7). Plaintiff contends that, although defendant was not personally involved during the alleged incident, he would still have actual knowledge of events occurring within the jurisdiction of Troop Nine. (D.I. 25 at 6)

For the purposes of this motion, the following events are not in dispute.[1] On October 24, 2008, sometime between midnight and 1:00 a.m., Senior Corporal Floyd

---

[1]Plaintiff did not contest any facts as put forth in defendant's papers in his response to defendant's motion.

McNally ("Corporal McNally") of the DSP stopped a vehicle in which plaintiff was riding as a passenger. (D.I. 2 at 3; D.I. 23 at 5)  The vehicle was stopped because its temporary tag did not match its registration in the State's Division of Motor Vehicles computer database. (D.I. 2 at 4; D.I. 23 at 5)  The driver produced identification and proof that he recently purchased the vehicle from IG Burton car dealership in Milford, DE, which had placed the temporary tag on it. (D.I. 23 at 6)  Corporal McNally stated that the total length of the stop was ten to fifteen minutes. (D.I. 23 at 5)

After Corporal McNally determined that the vehicle was registered to the driver, he or some other unknown DSP officer asked for plaintiff's identification. (D.I. 2 at 4; D.I. 23 at 2)  Plaintiff produced a Maryland driver's license and change of address form. (D.I. 2 at 4; D.I. 23 at 4)  The officer then asked plaintiff to exit the vehicle to view his "gang jacket."[2] (D.I. 2 at 5; D.I. 23 at 4)  When plaintiff refused, the officer informed him that, because the vehicle was stopped due to a suspicion of incorrect registration, the police had the authority to search him. (D.I. 2 at 5; D.I. 23 at 2)  Plaintiff continued to refuse to exit the vehicle. (D.I. 2 at 5; D.I. 23 at 4)  After about ten additional minutes, the police allowed the vehicle and all of its occupants to leave. (D.I. 2 at 5; D.I. 23 at 4)

On December 1, 2008, plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 ("§ 1983") against defendant and unknown DSP officers. (D.I. 2)  Lieutenant Colonel James Paige was the Commander of Troop Nine at the time of the traffic stop (D.I. 23 at 5); plaintiff concedes that defendant had no involvement at the scene. (*Id.*, ex. 1 at 55-56)

---

[2] Plaintiff acknowledges that he is a well-known member of the Pagan Motorcycle Club. (D.I. 2 at 6)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it

has the burden of proof, the moving party is entitled to judgment as a matter of law.

See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Plaintiff alleges that defendant's deficient policies caused his subordinates to infringe plaintiff's civil rights in violation of § 1983.  The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress

42 U.S.C.A. § 1983 (2010).  The Supreme Court recognizes two types of actions against public officials under § 1983:  suits brought against public officials acting in their official capacity, and suits brought against public officials acting in their personal capacity.  See *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

Defendant moves for summary judgment, contending that plaintiff failed to state a cause of action as a matter of law, in so far as defendant:  (1) cannot be held liable in his official capacity; and (2) was not personally involved in the alleged incident.  (D.I. 23)  As discussed below, plaintiff has not specified evidence sufficient to survive a motion for summary judgment under either avenue for recovery.

### A. Official Capacity

The Supreme Court has interpreted the words "[e]very person" as excluding the States from potential liability. See *id.* at 26; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Although state officials are literally persons, an action against a state

4

official acting in his official capacity is the same as an action against the State itself. *See Hafer*, 502 U.S. at 26; *Will*, 491 U.S. at 71.

In *Will*, the Supreme Court explained why § 1983 actions must fail against the State. In that case, Will was employed by the Michigan Department of State Police ("the Department"), a state agency. *See Will*, 491 U.S. at 60. His brother was a student activist and was being monitored by the Department. *See id.* Will alleged that the Department failed to promote him because of his brother's activities, naming the Department and its Director as defendants. *See id.* When he brought suit in state court, the Michigan Supreme Court held that the State was not a person under § 1983. *See id.* at 61. The Supreme Court granted certiorari to resolve a split in the Circuits over whether the States were persons under the civil rights act. *See id.* The Court held that, upon passing the civil rights acts, Congress could have revoked the States' sovereign immunity, or the States themselves could have waived their sovereign immunity; neither abrogation of sovereign immunity occurred. *See id.* at 66. Therefore, Congress must not have intended the States to be construed as "persons" when it passed the predecessor to § 1983; plaintiffs in § 1983 actions may not recover against the State. *See id.*

The *Will* Court explained why an action must also fail against a public official acting in his official capacity. When a plaintiff brings a suit against the state official in his official capacity, that suit is essentially against the official's office. *See id.* at 71. Because the suit is against the official's office, it is as if the plaintiff brought suit against

5

the State itself. *See id.* Therefore, just as in a direct suit against the State, plaintiff

cannot recover against a public official in his official capacity. *See id.*

In the case at bar, plaintiff did not bring suit against the State. However, plaintiff

did name as defendant "Commander, Delaware State Police, Troop Nine." As in *Will*

where the "Director of State Police" was the named defendant, plaintiff may have

intended to bring a § 1983 action against defendant's office. For the reasons given

above, to the extent that plaintiff intended to bring a § 1983 action against defendant in

his official capacity, the action must fail as a matter of law.

## B. Personal Capacity

While defendant in his official capacity is immune from an action arising under

§ 1983, plaintiff may have intended to bring suit against defendant in his personal

capacity. An action under § 1983 is not barred as a matter of law against a public

official in his personal capacity. *See Hafer*, 502 U.S. at 29. However, "[an individual

government] defendant in a civil rights action must have personal involvement in the

alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat

superior.*" *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "It is not enough

for a plaintiff to argue that the constitutionally cognizable injury would not have occurred

if the superior had done more than he or she did. The district court must insist that

[plaintiff] identify specifically what it is that [defendant] failed to do that evidences his

deliberate indifference." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

"Personal involvement can be shown through allegations of personal direction or of

actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. "Supervisory liability

6

may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were 'the moving force' behind the harm suffered by the plaintiff." *Poole v. Taylor*, 466 F. Supp. 2d 578, 585 (D. Del. 2006) (quoting *Sample*, 885 F.2d at 1117-18). *See also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, No. 04-1786, 128 Fed. Appx. 240 (3d Cir. 2005).

To survive a motion for summary judgment, plaintiff at bar was required to produce evidence that defendant was either personally involved in the deprivation of plaintiff's rights, or that defendant was deliberately indifferent to the risk of harm caused by defendant's deficient policies. Once defendant alleged that he was not personally involved with the events, plaintiff was required to provide evidence that defendant personally directed the officers on the night in question, or had knowledge of and acquiesced to the specific events alleged in plaintiff's complaint. *See Rode*, 845 F.2d at 1207-08. Plaintiff conceded at his deposition that he "didn't see [defendant] there" on the night in question. (D.I. 23, ex. 1 at 55) Therefore, plaintiff may not claim that defendant was personally involved. Furthermore, beyond a conclusory statement that defendant should have known about the officers' alleged activities on the night in question because he commands only a small company of police officers and sets the search and seizure policies, plaintiff presents no evidence that defendant was deliberately indifferent to the risk of deficient policies. (D.I. 25 at 6) Notably, plaintiff did not provide evidence of a specific policy promulgated by defendant that would have led his subordinates to violate plaintiff's civil rights. Although plaintiff states that he will

7

show defendant's culpability at trial, the time for discovery has passed, and plaintiff has not enumerated any policy responsible for his alleged civil rights injuries. Therefore, there is no genuine issue as to material fact remaining, and defendant is entitled to judgment as a matter of law.

## C. Remaining Defendants

In addition to defendant, plaintiff listed other unnamed DSP officers as defendants. The court ordered that plaintiff provide all amendments to join parties by June 26, 2009. (D.I. 13) Plaintiff did not amend his complaint before the deadline. (D.I. 23 at 1) Therefore, plaintiff has no cause of action against the remaining unknown defendants.

## V. CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment. The case will be dismissed against the remaining defendants. An appropriate order shall issue.